IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NO. **24-14058-JJ**

United States of America,

Appellee,

- versus -

Maxon Alsenat,

Appellant.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

_____

<u>BRIEF FOR THE UNITED STATES</u>

Jason A. Reding Quiñones
United States Attorney
Attorney for Appellee
99 N.E. 4th Street
Miami, Florida 33132-2111
(305) 961-9383

Daniel Matzkin
Chief, Appellate Division

Alexandra Bailey
Assistant United States Attorney

Jonathan D. Colan
Senior Appellate Attorney

Of Counsel

**United States v. Maxon Alsenat, Case No. 24-14058-JJ**
**Certificate of Interested Persons**

In compliance with Fed. R. App. P. 26.1 and 11th Circuit Rules 26.1 and 28-1, the undersigned certifies that the list below is a complete list of the persons and entities previously included in the government's CIP, as well as additional persons and entities (designated in bold face) who have an interest in the outcome of this case.

Alsenat, Maxon

Augustin-Birch, Hon. Panayotta D.

**Bailey, Alexandra**

Blenman, Eboni

Brown, Bruce O.

Caruso, Michael

**Colan, Jonathan D.**

**Davis, Michael S.**

Day, Timothy

Diaz Espinosa, Stefan Rafael

Dopico, Hector A.

Gayles, Hon. Darrin P.

Klco, Sara Michele

**United States v. Maxon Alsenat, Case No. 24-14058-JJ**

**Certificate of Interested Persons**

Lapointe, Markenzy

Leibowitz, Hon. David S.

Matzkin, Daniel

Moore, Robert F.

Mulvihill, Thomas G.

**O'Byrne, Hayden P.**

**Reding Quiñones, Jason A.**

Strauss, Hon. Jared M.

United States of America

Valle, Hon. Alicia O.

*/s/ Jonathan D. Colan*

Jonathan D. Colan

Senior Appellate Attorney

## Statement Regarding Oral Argument

The United States of America respectfully suggests that the briefs and record before this Court adequately present the facts and legal arguments and that oral argument would not significantly aid the decisional process.

## Table of Contents

**Page:**

Certificate of Interested Persons ........................................................................c-1

Statement Regarding Oral Argument ...................................................................i

Table of Contents ...............................................................................................ii

Table of Citations ..............................................................................................iv

Statement of Jurisdiction ..................................................................................xiii

Introduction ........................................................................................................1

Statement of the Issue ........................................................................................1

Statement of the Case:

    1.    Course of Proceedings and Disposition in the Court Below ............1

    2.    Statement of the Facts ......................................................................3

    3.    Standard of Review ...........................................................................4

Summary of the Argument ..................................................................................4

**Table of Contents (continued)**

**Page:**

Argument:

Section 922(o)'s regulation of machineguns and devices that enable
automatic fire complies with the Second Amendment ..............................................5

    A. Section 922(o) is a constitutional restriction on the mode
       or manner of fire ..................................................................................7

    B. Neither the Second Amendment's text nor the historical record
       prevent bans on dangerous and unusual weapons .....................................9

        1. The Second Amendment does not protect dangerous
          and unusual weapons not typically possessed for
          lawful purposes ........................................................................ 10

        2. Historical analogues support bans on possessing
          dangerous and unusual weapons, including machineguns ........ 15

        3. Alsenat's as-applied challenge was not properly raised
          either in his motion to dismiss or in this appeal, and
          § 922(o)'s prohibitions do not depend on an individual's
          personal characteristics in any event .........................................23

Conclusion ..............................................................................................26

Certificate of Compliance ..........................................................................27

Certificate of Service ................................................................................27

**Table of Citations**

**Cases:**                                                                      **Page:**

*Capen v. Campbell*,

  134 F.4th 660 (1st Cir. 2025) ........................................................................ 12, 17

*\*Class v. United States*,

  583 U.S. 174 (2018) .................................................................................... 23, 24

*\*District of Columbia v. Heller*,

  554 U.S. 570 (2008) .................................................... 1, 5, 6, 8-12, 14, 16

*Friedman v. City of Highland Park*,

  784 F.3d 406 (7th Cir. 2015) .............................................................................. 11

*Hanson v. D.C.*,

  120 F.4th 223 (D.C. Cir. 2024),

    *cert. denied*, No. 24-936, 2025 WL 1603612 (U.S. June 6, 2025) ..................... 17

*Hollis v. Lynch*,

  827 F.3d 436 (5th Cir. 2016),

    *abrogated on other grounds by*

    *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024) ...................................... 13

*\*Nat'l Rifle Ass'n v. Bondi*,

  133 F.4th 1108 (11th Cir. 2025) ............................................................. 10, 16, 20

**Table of Citations (continued)**

**Cases:**                                                                                                **Page:**

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,

  597 U.S. 1 (2022) ......................................................5, 6, 8, 9, 11, 15, 16-20, 23

*United States v. Bridges*,

  --F.4th--, 2025 WL 2250109 (6th Cir. Aug. 7, 2025).................................... 15, 16

*United States v. Deng*,

  104 F.4th 1052 (8th Cir.),

    *cert. denied*, 145 S. Ct. 348 (2024) ...................................................................24

*United States v. Fincher*,

  538 F.3d 868 (8th Cir. 2008)...............................................................................11

*United States v. Farrier*,

  No. 1:23-CR-212-TFM, 2024 WL 184451 (S.D. Ala. Jan. 17, 2024).................24

*United States v. Henry*,

  688 F.3d 637 (9th Cir. 2012)......................................................................... 11, 12

*United States v. Kenney*,

  91 F.3d 884 (7th Cir. 1996).................................................................................23

*United States v. Lightsey*,

  120 F.4th 851 (11th Cir. 2024) ...........................................................................25

**Table of Citations (continued)**

**<u>Cases:</u>**                                                                                                                  **<u>Page:</u>**

*United States v. Miller*,

  307 U.S. 174 (1939).................................................................................................10

*United States v. Mims*,

  --F.4th--, 2025 WL 1934570 (11th Cir. July 15, 2025)...........................................6

*United States v. Napa Moreira*,

  810 F. App'x 702 (11th Cir. 2020) .........................................................................24

*United States v. O'Brien*,

  560 U.S. 218 (2010) ................................................................................................12

*United States v. One (1) Palmetto State Armory PA-15 Machinegun*

  *Receiver/Frame, Unknown Caliber Serial No. LW001804,*

  822 F.3d 136 (3d Cir. 2016)........................................................................... 11, 25

*United States v. Pope*,

  613 F.3d 1255 (10th Cir. 2010)...............................................................................24

*United States v. Rahimi*,

  602 U.S. 680 (2024) ................................................................. 5, 6, 9-11, 16, 17

*United States v. Reed*,

  No. 23-13969, 2025 WL 1662611 (11th Cir. June 12, 2025)................................7

**Table of Citations (continued)**

**Cases:**                                                                                 **Page:**

*United States v. Rozier*,

　598 F.3d 768 (11th Cir. 2010)..................................................................4

*United States v. Rush*,

　130 F.4th 633 (7th Cir. 2025) ................................................................12

*United States v. Simmons*,

　143 F.4th 200 (4th Cir. 2025) ................................................................11

*United States v. Snipes*,

　611 F.3d 855 (11th Cir. 2010)................................................................24

**Statutes:**                                                                               **Page:**

18 U.S.C. § 921 ......................................................................................1, 5

18 U.S.C. § 922........................................................................... 24, 25

18 U.S.C. § 922(o) ......................................... 1, 2, 4, 5, 7-10, 13, 15, 16, 23, 25, 26

18 U.S.C. § 3231 ..................................................................................... viii

26 U.S.C. § 5811 .......................................................................................23

26 U.S.C. § 5845 ................................................................................ 1, 5, 8

26 U.S.C. § 5801-5802 ..............................................................................22

28 U.S.C. § 1291 ..................................................................................... viii

**Table of Citations (continued)**

**Statutes:**                                                                    **Page:**

An Act Against Wearing Swords, &c., ch. 9, East N.J. (1686)..............................18

Firearm Owners' Protection Act, Pub. L. No. 99-308,

    § 102, 100 Stat. 449 (1986).......................................................................23

Act of Dec. 25, 1837, § 1, 1837 Ga. Laws 90........................................................19

Act of Apr. 7, 1849, ch. 278, § 2, 1849 N.Y. Laws 404.........................................19

Act of Apr. 16, 1881, § 1, 1881 Ill. Laws 73 ..................................................... 19, 20

Act of May 14, 1917, ch. 145, § 2, 1917 Cal. Stat. 221 .........................................19

Act of June 5, 1925, ch. 3, 1925 W. Va. Acts 24-32 ..............................................20

Act of Mar. 9, 1927, ch. 156, § 1, 1927 Ind. Acts 469 ...........................................20

Act of Mar. 19, 1927, ch. 95, § 2, 1927 N.J. Laws 181..........................................20

Act of Apr. 19, 1927, ch. 234, § 1, 1927 Iowa Acts 201 .................................. 20, 21

Act of Apr. 22, 1927, ch. 1052, § 4, 1927 R.I. Pub. Laws 257 ..............................20

Act of Apr. 27, 1927, ch. 326, § 1, 1927 Mass. Acts 413-14 .................................20

Act of May 16, 1927, ch. 552, § 1, 1927 Cal. Stat. 938 ................................... 20, 21

Act of June 2, 1927, No. 372, § 3, 1927 Mich. Pub. Acts 888-89.................... 20, 21

Act of Apr. 25, 1929, No. 329, § 2, 1929 Pa. Laws 777 .................................. 20, 21

Act of Apr. 29, 1929, ch. 190, § 1, 1929 Neb. Laws 674........................................20

Act of May 28, 1929, ch. 132, § 1, 1929 Wis. Laws 157................................. 20, 21

**Table of Citations (continued)**

**Statutes:**                                                                                                    **Page:**

Act of June 1, 1929, H.R. 498, § 1, 1929 Mo. Laws 170 .......................................21

Act of Feb. 25, 1931, ch. 249, § 1, 1931 Del. Laws 813 ................................. 21, 22

Act of Mar. 9, 1931, ch. 178, § 2, 1931 N.D. Laws 306 ....................................21

Act of Apr. 15, 1931, ch. 435, § 1, 1931 N.Y. Laws 1033...................................21

Act of July 2, 1931, § 2, 1931 Ill. Laws 452 .......................................................21

Act of July 7, 1932, No. 80, § 2, 1932 La. Acts 337 ........................................ 21, 22

Act of Feb. 28, 1933, ch. 206, §§ 1-5, 1933 S.D. Laws 245 ..................................21

Act of Mar. 6, 1933, ch. 64, § 1, 1933 Wash. Laws 335 .................................. 21, 22

Act of Mar. 10, 1933, ch. 315, § 3, 1933 Or. Laws 489.........................................21

Act of Apr. 8, 1933, No. 64, 1933 Ohio Laws 189 ...............................................21

Act of Apr. 10, 1933, ch. 190, § 3, 1933 Minn. Laws 233 .............................. 21, 22

Act of Apr. 27, 1933, No. 120, § 2, 1933 Haw. Laws 117....................................21

Act of Oct. 25, 1933, ch. 82, §§ 2-3, 1933 Tex. Laws 219 ............................. 21, 22

Act of Nov. 28, 1933, ch. 62, § 1, 1933 Kan. Laws 76 ................................... 21, 22

Act of Mar. 2, 1934, No. 731, §§ 2-4, 1934 S.C. Acts 1288 .................................21

Act of Mar. 7, 1934, ch. 96, §§ 2-5, 1934 Va. Acts 137 .......................................21

Statute of Northampton, 2 Edw. 3, c. 3 (1328) (Eng.)..............................................17

**Table of Citations (continued)**

**Rules:**                                                                                           **Page:**

Fed. R. App. P. 26.1 .........................................................................................3

Fed. R. App. P. 32 ...........................................................................................27

Fed. R. App. P.4 .......................................................................................... viii

Fed. R. Crim. P. 12 .........................................................................................24

**Other Authorities:**                                                                           **.Page:**

ATF, Current Processing Times, https://www.atf.gov/resource-center/

  current-processing-times/ .........................................................................14

William Baude & Robert Leider, *The General-Law Right to Bear Arms*, 99 Notre

  Dame L. Rev. 1467 (2024) ...........................................................................7

John Berrigan, et al., *The Number and Type of Private Firearms in the*

  *United States*, Annals of the American Academy of Political and Social

  Science, Vol. 704, Issue 1 (Nov. 2022) .............................................13

4 William Blackstone, Commentaries on the Laws of England ...........................9, 17

1 Richard Burn, The Justice of the Peace, and Parish Officer (2d ed. 1756) ..........18

Boise State Public Radio, *Automatic weapons are legal, but it takes a lot*

  *to get one of the 630,000 in the U.S.* (Dec. 21, 2018),

  https://www.boisestatepublicradio. org/news/2018-12-21/automatic-

  weapons-are-legal-but-it-takes-a-lot-to-get-one-of-the-630-000-in-the-u-s.......13

**Table of Citations (continued)**

**Other Authorities:**                                                                      **Page:**

John Ellis, The Social History of the Machine Gun (1986) ............................ 17, 20

Joseph Greenleaf, An Abridgment of Burn's Justice of the Peace

    and Parish Officer   (1773).................................................................18

H.R. Rep. No. 83-1337 (1954)................................................................12

H.R. Rep. No. 99-495 (1986)................................................................13

1 William Hawkins, A Treatise of the Pleas of the Crown (1716).........................18

William Waller Hening, The New Virginia Justice   (1795)..................................18

Oliver Krawczyk, *Dangerous and Unusual: How an Expanding*

    *National Firearms Act Will Spell Its Own Demise*, 127 Dickinson

    L. Rev. 273 (2022) ......................................................................14

Eliphalet Ladd, Burn's Abridgement, Or The American Justice (2d ed. 1792)......18

Aaron Leaming & Jacob Spicer, Grants, Concessions, and Original

    Constitutions of the Province of New Jersey (2d ed. 1881) ...............................18

James Parker, *Conductor Generalis* (1764)...............................................18

James Parker, *Conductor Generalis* (Robert Hodge printing 1788) ......................18

James Parker, *Conductor Generalis* (Robert Campbell printing 1792) ..................18

**Table of Citations (continued)**

**Other Authorities:**                                    **Page:**

Pew Research Center, *Key facts about Americans and guns*,

   https://www.pewresearch.org/short-reads/2024/07/24/key-facts-about-

   americans-and-guns/ ................................................................................14

S. Rep. No. 73-1444, at 1-2 (1934)........................................................................22

Daniel D. Slate, *Infringed*, 3 J. Am. Const. Hist. 381 (2025)....................................7

Small Arms Survey, *Estimating Global Civilian-Held Firearms Numbers*,

   (June 2018), https://www.smallarmssurvey.org/sites/default/files/

   resources/SAS-BP-Civilian-Firearms-Numbers.pdf...........................................13

Robert J. Spitzer, *Understanding Gun Law History after* Bruen: *Moving Forward*

   *by Looking Back*, 51 Fordham Urb. L.J. 58 (2023) ..................................... 19-21

The Trace, *How Many Guns are Circulating in the U.S.?*,

   https://www.thetrace.org/2023/03/guns-america-data-atf-total/..........................13

U.S. Census Bureau, *Happy New Year 2024!*,

   https://www.census.gov/library/stories/2023/12/happy-new-year-2024.html....14

W. Kip Viscusi & Kyle J. Blasinsky, *Leveraging Public Support for Gun*

   *Laws to Reduce Mass Shootings,* 2024 U. Ill. L. Rev. 707 (2024).............. 22, 23

## Statement of Jurisdiction

This is an appeal from a final judgment of the United States District Court for the Southern District of Florida in a criminal case. The district court entered judgment against Maxon Alsenat on November 26, 2024 (DE:87). The district court had jurisdiction to enter the judgment pursuant to 18 U.S.C. § 3231. Alsenat filed a timely notice of appeal on December 10, 2024 (DE:89); *see* Fed. R. App. P.4(b). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

**Introduction**

Appellant Maxon Alsenat asks this Court to adopt what the Supreme Court called a "startling reading" of the Second Amendment that would preclude regulation of machinegun possession. *See District of Columbia v. Heller*, 554 U.S. 570, 624 (2008). But the Supreme Court and this Court recognize that the Second Amendment allows regulation of dangerous and unusual weapons not typically possessed for lawful purposes. And every circuit court to have considered 18 U.S.C. § 922(o)'s machinegun regulation has upheld the law against Second Amendment challenge. This Court should join its sister circuits and reject Alsenat's startling request.

**Statement of the Issue**

Whether the Second Amendment's text or the history of regulating dangerous and unusual weapons render 18 U.S.C. § 922(o)'s regulation of machinegun conversion devices unconstitutional facially or as applied in this case.

**Statement of the Case**

1. **Course of Proceedings and Disposition in the Court Below**

Appellant Maxon Alsenat was indicted by a federal grand jury in the Southern District of Florida and charged with knowingly possessing a machinegun, as defined in 18 U.S.C. § 921(a)(24) and 26 U.S.C. § 5845(b), specifically a machinegun conversion device, in violation of 18 U.S.C. § 922(o) (DE:3).

Alsenat moved to dismiss the indictment, arguing that § 922(o)'s machinegun possession ban violated the Second Amendment facially and as applied to him (DE:35). The government responded that machineguns (and qualifying conversion devices) were dangerous and unusual weapons not protected by the Second Amendment, and it also proffered analogous historical laws banning the possession of such dangerous and unusual weapons, including machineguns soon after their invention (DE:45). After Alsenat replied in support of his motion (DE:46), the United States magistrate judge to whom the matter was referred issued a report recommending that Alsenat's motion be denied because his "alleged conduct is not covered by the plain text of the Second Amendment" (DE:48:6).

Alsenat objected to the magistrate judge's report (DE:59), and the government responded (DE:62).

The district court denied Alsenat's motion, concluding that a machinegun conversion device "by itself and unattached to any weapon, is not an 'Arm' at all, as the term was originally understood at the time of the Second Amendment's ratification" (DE:66:1-2).

Alsenat then pled guilty to the indictment without reserving any right to appeal the denial of his as-applied challenge (DE:97:20-21) and submitted a factual proffer in support of his plea (DE:72; DE:97:15-18).

2

Following sentencing proceedings, the district court entered judgment against Alsenat, sentencing him to serve a 24-month imprisonment term, to be followed by three years of supervised release (DE:87).

Alsenat filed a timely notice of appeal (DE:89). He has completed his imprisonment term and is currently serving his supervised release term.

## 2.    <u>Statement of the Facts</u>

Alsenat stipulated to the following facts in support of his guilty plea (DE:72; DE:97:15-18).

In June 2023, Alsenat sold an undercover law enforcement official (UC) three machinegun conversion devices for $1,500. During and after the sale, Alsenat taught the UC how to install the devices onto a semiautomatic weapon and explained that the devices would turn the semiautomatic weapon into a fully-automatic machinegun.

Alsenat also stipulated that machinegun conversion devices "qualify as machine guns, as defined in Title 26, United States Code, Section 5845(b)," and that he "knew that the [devices] had the capability of enabling a semi-automatic firearm to discharge more than one shot without manual reloading and with a single function of the trigger" (DE:72:1).

3.    **Standard of Review**

"Challenges to the constitutionality of a statute are reviewed de novo." *United States v. Rozier*, 598 F.3d 768, 770 (11th Cir. 2010).

**Summary of the Argument**

Section 922(o)'s regulation of automatic weapons is constitutional, because it bans only a mode of firing capability, and even if construed to ban a class of weapons itself, the Second Amendment does not protect dangerous and unusual weapons. The government recognizes that although machinegun conversion devices are not themselves arms, laws regulating such devices implicate the Second Amendment because they burden firearm accessories. But § 922(o) is nonetheless constitutional as applied to machinegun conversion devices just as to fully functioning machineguns. Automatic weapons are not protected by the Second Amendment, and the historical record supports the regulation of such dangerous and unusual weapons.

Alsenat's as-applied challenge to § 922(o) was waived by his guilty plea. And such a challenge would not properly have been resolved at the dismissal motion stage, anyway, because it requires consideration of facts outside the indictment. Even on its merits, § 922(o) is premised on the danger presented by the items regulated, not by the persons possessing them. Alsenat has shown no reason why his particular characteristics matter.

Both Alsenat's facial and as-applied challenges to the statute fail.

4

**Argument**

### Section 922(o)'s regulation of machineguns and devices that enable automatic fire complies with the Second Amendment.

Subject to two exceptions that do not apply here, Section 922(o) makes it "unlawful for any person to transfer or possess a machinegun." 18 U.S.C. § 922(o)(1). A "machinegun" is "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b); *see* 18 U.S.C. § 921(a)(24) (incorporating definition from Title 26). The term also includes "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun." 26 U.S.C. § 5845(b). Alsenat stipulated that the devices here met that definition (DE:72:1).

The Second Amendment states that the "right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Amendment "protect[s] an individual right to keep and bear arms for self-defense." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022). The right, however, "was never thought to sweep indiscriminately." *United States v. Rahimi*, 602 U.S. 680, 691 (2024). "Like most rights, the right secured by the Second Amendment is not unlimited" and is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). It does not protect possession of "dangerous and unusual

weapons" "not typically possessed by law-abiding citizens for lawful purposes." *See Heller*, 554 U.S. at 625, 627.

When considering whether a firearm regulation is constitutional, the appropriate two-part test is based on "the Second Amendment's text, as informed by history." *Bruen*, 597 U.S. at 19. If the "plain text" of the Amendment "covers an individual's conduct" at the first step of the analysis, the regulation must then be "consistent with this Nation's historical tradition of firearm regulation" to pass the second step. *Id*. at 17. But "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791." *Rahimi*, 602 U.S. at 691-92. Instead, the modern law "must comport with the principles underlying the Second Amendment." *Id*. at 692. "Why and how the regulation burdens the right are central to this inquiry." *Id.*

The government recognizes that machinegun conversion devices, despite not being "arms," nevertheless implicate the Second Amendment. Though the district court ruled otherwise, this Court should still affirm its denial of Alsenat's dismissal motion, regardless of the district court's reasoning. *See United States v. Mims*, --F.4th--, 2025 WL 1934570, at *2 n.4 (11th Cir. July 15, 2025) ("we may affirm on any ground supported by the record, regardless of whether that ground was relied upon or even considered below" (internal quotation omitted)).

6

This Court has thus far only addressed § 922(o) on plain error review, granting summary affirmance of a challenger's conviction in the absence of any controlling authority holding the statute in violation of the Second Amendment. *See United States v. Reed*, No. 23-13969, 2025 WL 1662611, at *1 (11th Cir. June 12, 2025). The Court should now hold definitively that the Second Amendment does not preclude § 922(o)'s regulation of machineguns, including devices that convert weapons to automatic fire.

## A.    Section 922(o) is a constitutional restriction on the mode or manner of fire.

The founding generation distinguished between a valid regulation and an impermissible "infringement" of the right to keep and bear arms. *See* Daniel D. Slate, *Infringed*, 3 J. Am. Const. Hist. 381, 382-87 (2025). A restriction could amount to an unconstitutional infringement if (among other reasons) it serves an illegitimate purpose, burdens the right more severely than necessary to serve a valid purpose, or broadly negates the right. *See* William Baude & Robert Leider, *The General-Law Right to Bear Arms*, 99 Notre Dame L. Rev. 1467, 1489 (2024).

Under this framework, § 922(o) is a constitutional restriction on the mode or manner of fire. The statute does not broadly negate the right to keep and bear arms. It does not even ban a particular class of weapons—such as rifles, pistols, or shotguns—but instead requires that weapons of all classes be configured for no more than semiautomatic rather than fully automatic fire. Indeed, the federal definition of

7

"machinegun" focuses solely on the mode of fire (firing more than one shot with a single function of the trigger) and not on any other characteristics of the firearm. 26 U.S.C. § 5845(b). And, far from serving an illegitimate purpose, § 922(o) reasonably restricts the automatic mode of fire because of its potential to cause serious harm by indiscriminately spraying bullets over a wide area.

As a restriction on the mode of fire, § 922(o) is unlike the law that the Supreme Court held unconstitutional in *Heller*, 554 U.S. at 629, which was a "complete prohibition" on handguns, "the most popular weapon chosen by Americans for self-defense in the home." Instead, § 922(o) operates more like historical laws prohibiting the concealed carry of firearms. As the Supreme Court has explained, "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." *Id.* at 626. Although "the history reveals a consensus that States could *not* ban public carry altogether," the historical evidence "demonstrate[s] that *the manner* of public carry was subject to reasonable regulation" and states could "lawfully eliminate one kind of public carry—concealed carry—so long as they left open the option to carry openly," *Bruen*, 597 U.S. at 53, 59 (emphasis in original).

Section 922(o) is a permissible "manner" restriction analogous to those historical laws. The statute does not prevent Alsenat from possessing, for example, any assault rifles or pistols configured for semiautomatic fire. Instead, it prohibits

8

only the possession of firearms configured to fire automatically and of conversion devices such as those Alsenat possessed here. As such, § 922(o) does not violate the Second Amendment.

**B.      Neither the Second Amendment's text nor the historical record prevent bans on dangerous and unusual weapons.**

Even if § 922(o) is viewed as a restriction on a class of firearms, as opposed to simply a restriction on the manner of fire or parts converting weapons to a certain manner of fire, it is still constitutional, because possessing automatic weapons is not protected by the Second Amendment.

The Second Amendment does not protect machinegun possession, because it "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." *See Heller*, 554 U.S. at 625. That "important limitation on the right to keep and carry arms … is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id.* at 627 (citing William Blackstone, 4 Commentaries on the Laws of England 148-149 (1769) and other sources). The Supreme Court reiterated that limitation again in *Rahimi*, 602 U.S. at 691. Alsenat's facial and as-applied § 922(o) challenge thus fails both steps of the *Bruen* analysis.

9

1.    **The Second Amendment does not protect dangerous and unusual weapons not typically possessed for lawful purposes.**

The Second Amendment's text does not preclude § 922(o)'s regulation of machineguns because the amendment's protection only applies to weapons in common use for lawful purposes. Indeed, machineguns have long been considered "dangerous and unusual weapons," not weapons that are in common use for lawful purposes. *See Heller*, 554 U.S. at 627 (exempting such weapons from protection); *United States v. Miller*, 307 U.S. 174, 179 (1939) (limiting the Second Amendment's protection to weapons in common use for defense). The Supreme Court in *Heller* observed that it "would be a startling reading" of *Miller* if § 922(o)'s machinegun regulation were deemed unconstitutional. *Heller*, 554 U.S. at 624. *Rahimi* reiterated that "'the right secured by the Second Amendment is not unlimited'" and cited Founding-era laws "bann[ing] the carrying of 'dangerous and unusual weapons'" as an example of its limitations. *Rahimi*, 602 U.S. at 691 (quoting *Heller*, 554 U.S. at 626, 627). Alsenat's possession of conversion devices capable of enabling automatic fire fits within this limitation.

This Court recently recognized the Supreme Court's continued, post-*Rahimi* acknowledgment of bans on "dangerous and unusual weapons." *See Nat'l Rifle Ass'n v. Bondi*, 133 F.4th 1108, 1114 (11th Cir. 2025) (en banc) (noting that "[s]ince the Founding, American law has regulated arms-bearing conduct in many ways

10

[including] dangerous and unusual weapons" (cleaned up) (citing *Rahimi*, 602 U.S. at 691).

And while this Court has not directly ruled on whether machineguns are considered dangerous and unusual weapons, other circuits had done so, prior to *Bruen*—and they found that machinegun possession was not protected. *See e.g.*, *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No. LW001804*, 822 F.3d 136, 142 (3d Cir. 2016) ("[T]he Second Amendment does not protect the possession of machine guns. They are not in common use for lawful purposes."); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008) ("Machine guns are not in common use by law-abiding citizens for lawful purposes …."); *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012) ("*Heller* did not specify the types of weapons that qualify as 'dangerous and unusual,' but the Court stated that it would be 'startling' for the Second Amendment to protect machine guns.") (citation omitted); *Friedman v. City of Highland Park*, 784 F.3d 406, 408 (7th Cir. 2015) ("The Court took from *Miller* the rule that the Second Amendment does not authorize private persons to possess weapons such as machine guns and sawed-off shotguns that the government would not expect (or allow) citizens to bring with them when the militia is called to service.").

Three circuits have so far continued to recognize such weapons as outside the Second Amendment's protection after *Bruen* and *Rahimi*. *See United States v.*

11

*Simmons*, 143 F.4th 200, 207 (4th Cir. 2025) ("auto sears," which convert firearms to automatic fire, "fall outside the ambit of the Second Amendment's protection"); *Capen v. Campbell*, 134 F.4th 660, 672 (1st Cir. 2025) (reading *Heller* to "except[] … fully automatic weapons … from the Second Amendment's protection"); *United States v. Rush*, 130 F.4th 633, 637 (7th Cir. 2025) ("Weapons, like machine guns, that are not typically possessed by law-abiding citizens for lawful purposes remain unprotected." (cleaned up)).

Those courts' reasoning is supported by the relevant data. Machineguns are extraordinarily lethal. The Supreme Court has recognized "[t]he immense danger posed by machineguns." *United States v. O'Brien*, 560 U.S. 218, 230 (2010). As the Ninth Circuit has explained, "[a] modern machine gun can fire more than 1,000 rounds per minute, allowing a shooter to kill dozens of people within a matter of seconds." *Henry*, 688 F.3d at 640. Thus, "[s]hort of bombs, missiles, and biochemical agents," that court could "conceive of few weapons that are more dangerous than machine guns." *Id.*

Congressional findings establish that machineguns are not "typically possessed by law-abiding citizens for lawful purposes." *See Heller*, 554 U.S. at 625 (describing that limitation). It has found that they are "used readily and efficiently by criminals or gangsters," H.R. Rep. No. 83-1337, at A395 (1954), and are "used

12

by racketeers and drug traffickers for intimidation, murder and protection of drugs and the proceeds of crime," H.R. Rep. No. 99-495, at 4 (1986).

One exception to § 922(o)'s ban grandfathered in the possession of machineguns that were lawfully possessed before the statute's effective date in 1986. 18 U.S.C. § 922(o)(2)(B). The Fifth Circuit has observed that "there are 175,977 pre-1986 civilian-owned machineguns in existence." *Hollis v. Lynch*, 827 F.3d 436, 449 (5th Cir. 2016), *abrogated on other grounds by United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024). That is a tiny fraction of the 300 million to 500 million privately owned firearms in the United States.[1] Moreover, those approximately 176,000 civilian-owned machineguns are not spread over 176,000 civilians, because many are amassed by collectors who own multiple machineguns.[2] But even assuming (wrongly) that those machineguns were spread among 176,000 civilians, only one

---

[1] *See* The Trace, *How Many Guns are Circulating in the U.S.?*, https://www.thetrace.org/2023/03/guns-america-data-atf-total/ (estimate of 494 million); Small Arms Survey, *Estimating Global Civilian-Held Firearms Numbers*, at 4 (June 2018), https://www.smallarmssurvey.org/sites/default/files/resources/ SAS-BP-Civilian-Firearms-Numbers.pdf (estimate of 393 million); John Berrigan, et al., *The Number and Type of Private Firearms in the United States*, Annals of the American Academy of Political and Social Science, Vol. 704, Issue 1, at 82 (Nov. 2022) (estimate of 326 million in 2019).

[2] *See* Boise State Public Radio, *Automatic weapons are legal, but it takes a lot to get one of the 630,000 in the U.S.* (Dec. 21, 2018), https://www.boisestatepublicradio. org/news/2018-12-21/automatic-weapons-are-legal-but-it-takes-a-lot-to-get-one- of-the-630-000-in-the-u-s (interviewing a collector with more than 20 machineguns). While reports indicate that there are approximately 630,000 machineguns total in the United States, only 175,977 pre-1986 machineguns are legally possessed and transferable amongst civilians. *See Hollis*, 827 F.3d at 449.

13

in 1,908 Americans—roughly 0.05% of the population[3]—would legally own a machinegun, compared to the roughly one in three Americans who owns a firearm.[4]

Given the fixed supply of pre-1986 machineguns, the cost of a privately registered machinegun is extremely high. "[T]oday, a transferable M16 costs nearly $30,000 while 'entry-level' machine guns cost in the ballpark of $10,000." Oliver Krawczyk, *Dangerous and Unusual: How an Expanding National Firearms Act Will Spell Its Own Demise*, 127 Dickinson L. Rev. 273, 285 (2022). The current wait time for such a transfer (accomplished using ATF Form 4) is 137 days for paper forms and 28 days for electronic forms. *Id*. at 289 & n.81; ATF, Current Processing Times, https://www.atf.gov/resource-center/current-processing-times (as of Dec. 1, 2024). The limited number of pre-1986 machineguns in civilian hands, their high cost, and the difficulty of acquiring them all indicate that they are not "in common use" or "typically possessed by law-abiding citizens." *See Heller*, 554 U.S. at 624-25, 627.

The Sixth Circuit has recently concluded that "the Second Amendment's plain text covers [the] possession of a machinegun," based on the simple reasoning that "a machinegun—such as a handgun modified for fully automatic fire—is undoubtedly

---

[3] *See* U.S. Census Bureau, *Happy New Year 2024!*, https://www.census.gov/library/stories/2023/12/happy-new-year-2024.html (estimating a population of 335,893,238).

[4] *See* Pew Research Center, *Key facts about Americans and guns*, https://www.pewresearch.org/short-reads/2024/07/24/key-facts-about-americans-and-guns/.

an 'Arm[]' that one can 'keep and bear.'" *United States v. Bridges*, --F.4th--, 2025 WL 2250109, at *5 (6th Cir. Aug. 7, 2025) (citation omitted). As noted below, however, that circuit nevertheless upheld § 922(o) because its regulation of machinegun possession is consistent with historical tradition under *Bruen's* second step. *See id.* at *9.

Nevertheless, the government maintains that Alsenat's challenge fails *Bruen's* first step (Second Amendment protection) under the long-recognized limitation on the amendment's scope. The conversion devices at issue in this case converted otherwise lawful firearms into ones capable of automatic fire, something specifically prohibited by law. Alsenat stipulated to knowing what they were for and to selling three for $1,500 (DE:72; DE:97:15-18). His conduct did not constitute possession of a common weapon for lawful purposes and thus fell outside the Second Amendment's protection.

## 2. Historical analogues support bans on possessing dangerous and unusual weapons, including machineguns.

If this Court were to first deem machineguns (including these conversion devices) to be protected by the Second Amendment, at *Bruen's* first step, and then proceed to the second step, the "historical tradition of firearm regulation" further supports the banning of such dangerous and unusual weapons. *Bruen*, 597 U.S. at 17. The district court did not need to examine this step, because *Bruen* only requires a historical analysis of allowed restrictions if a claimant first establishes the

15

threshold requirement that "the Second Amendment's plain text covers [the] individual's conduct." *Id.* at 24. But in the event this Court considers machineguns and conversion devices presumptively protected, the government presents this second-step analysis.

The government may justify a firearms law when "historical precedent" from "before, during, and even after the founding evinces a comparable tradition of regulation," *id.* at 27, based on "well-established and representative historical analogue[s]," *id.* at 30. The government's filings below proffered extensive historical support for the outright banning of dangerous and unusual weapons, including machineguns (DE:45; DE:62). Alsenat's assertion that the government has not shown a historical basis for banning the mere possession of dangerous and unusual weapons, including machinguns, is simply wrong.

As established in *Heller* and reaffirmed in *Bruen* and *Rahimi*, there is a longstanding historical tradition in this country of banning "dangerous and unusual weapons." *Heller*, 554 U.S. at 627; *Bruen*, 597 U.S. at 21; *Rahimi*, 602 U.S. at 691. *See Bondi*, 133 F.4th at 1114 (citing *Rahimi*).

The Sixth Circuit has now directly held that "§ 922(o)'s ban on machinegun possession 'is consistent with the Nation's historical tradition of firearm regulation.'" *Bridges*, --F.4th--, 2025 WL 2250109, at *9 (quoting *Bruen*, 597 U.S. at 24). And two other circuits have recognized the historical bases for regulating the

16

possession of automatic weapons under *Bruen's* second step analysis. *See Capen v. Campbell*, 134 F.4th 660, 670 (1st Cir. 2025) (citing that circuit's recognition of the historical basis for regulating machineguns, while considering a ban on semi-automatic assault weapons); *Hanson v. D.C.*, 120 F.4th 223, 239 (D.C. Cir. 2024) (noting that historical machinegun bans "fit nicely into the tradition of regulating weapons particularly capable of unprecedented lethality," while addressing a ban on extended capacity magazines), *cert. denied*, No. 24-936, 2025 WL 1603612 (U.S. June 6, 2025). The historical record supports those acknowledgments.

Machineguns did not exist at the time of the country's founding. They entered the civilian market shortly after World War I and were soon widely used by criminals. *See* John Ellis, The Social History of the Machine Gun 149-77 (1986). But as far back as England's 1328 Statute of Northampton, the offense of "rid[ing]" or "go[ing] armed" was punishable by forfeiture of the offender's "armor." 2 Edw. 3, c. 3 (1328) (Eng.); *see Bruen*, 597 U.S. at 40-45. This statute was understood to provide that "[t]he offence of riding or going armed, with dangerous or unusual weapons, is a crime against the public peace, by terrifying the good people of the land." 4 William Blackstone, Commentaries on the Laws of England 148-49 (10th ed. 1787); *see Rahimi*, 602 U.S. at 697-98. In this way, the statute was consistent with the common law offense of "affray," which included cases "where a man arms himself with dangerous and unusual weapons, in such a manner as will naturally

17

cause a terror to the people." 1 Richard Burn, The Justice of the Peace, and Parish Officer 13-14 (2d ed. 1756); 1 William Hawkins, A Treatise of the Pleas of the Crown 135 (1716).

In 1686, the province of East New Jersey prohibited even the concealed carry of "unusual and unlawful weapons." An Act Against Wearing Swords, &c., ch. 9, in Aaron Leaming & Jacob Spicer, Grants, Concessions, and Original Constitutions of the Province of New Jersey 289-90 (2d ed. 1881). Early American justice-of-the-peace manuals empowered justices to confiscate the arms of a person who "arm[ed] himself with dangerous and unusual weapons, in such a manner as will naturally cause a terror to the people."[5] Although these statutes contemplated that an affray required "something more" than merely carrying any firearm in public, *Bruen*, 597 U.S. at 50, they contemplated that it would naturally constitute affray to carry dangerous and unusual weapons, *see id.* at 46-47.

Consistent with this tradition, following Independence, States regularly banned the mere possession of various dangerous and unusual weapons throughout the 19th and early 20th Centuries. This post-ratification history is particularly

---

[5] Joseph Greenleaf, An Abridgment of Burn's Justice of the Peace and Parish Officer 12-13 (1773) (Mass.); William Waller Hening, The New Virginia Justice 18 (1795) (Va.); Eliphalet Ladd, Burn's Abridgement, Or The American Justice 22-24 (2d ed. 1792) (N.H.); James Parker, *Conductor Generalis* 12 (1764) (N.J.); James Parker, *Conductor Generalis* 12 (Robert Hodge printing 1788) (N.Y.); James Parker, *Conductor Generalis* 11 (Robert Campbell printing 1792) (Pa.).

relevant given that machineguns are largely a 20th-century innovation. As *Bruen* recognized, "unprecedented societal concerns or dramatic technological changes may require a more nuanced approach" to the analogical inquiry. *Bruen*, 597 U.S. at 27.

At a time when a firearm typically could not fire more than a single shot, States banned the mere possession of other dangerous and unusual weapons not designed for lawful use. States banned certain knives—most notably, the bowie knife, a knife with a distinctive hand guard that had a large fixed blade that was sharp on one side. Robert J. Spitzer, *Understanding Gun Law History after* Bruen*: Moving Forward by Looking Back*, 51 Fordham Urb. L.J. 58, 88-94 (2023). States also banned blunt weapons like "slung shots," brass knuckles, and billy clubs. The "slung shot," for example, was "a hand-held weapon for striking that has a piece of metal or stone at one end attached to a flexible strap or handle." *Id.* at 95-98. Because it was associated with crime, New York, for example, made it a felony to "be found in the possession of . . . any instrument or weapon of the kind usually known as a slung shot." *See* Act of Apr. 7, 1849, ch. 278, § 2, 1849 N.Y. Laws 404. *See also* Act of Dec. 25, 1837, § 1, 1837 Ga. Laws 90 (prohibiting any person "to sell, or offer to sell, or to keep, or to have about their person or elsewhere" bowie knives); Act of May 14, 1917, ch. 145, § 2, 1917 Cal. Stat. 221 ("prohibiting the possession, carrying, manufacturing and sale of certain other dangerous weapons"); Act of Apr.

16, 1881, § 1, 1881 Ill. Laws 73 (penalizing "whoever shall have in his possession" "any slung-shot or metallic knuckles, or other deadline weapon of like character").

This Court has acknowledged this historical record regarding "abnormally dangerous weapons." *See Bondi*, 133 F.4th at 1124 (noting Tennessee's 1858 ban on the possession of a "bowie-knife, dirk, Arkansas tooth-pick, hunter's knife, or like dangerous weapon").

When machineguns became a "general societal problem" after World War I, many States banned them quickly without genuine "disputes regarding the lawfulness of such prohibitions." *See Bruen*, 597 U.S. at 26, 30 (suggesting the absence of controversy over the existence of laws addressing such problems as an indication of their constitutionality).

Machineguns migrated from the battlefield to the civilian market following the war, and they immediately caused a national crisis as criminals overpowered law enforcement officials with firearms like the Thompson submachine gun (or "Tommy Gun"). *See* Ellis, The Social History of the Machine Gun at 149-77. Shortly thereafter, States across the nation passed anti-machine gun laws.[6] *See* Spitzer, 51

---

[6] Act of June 5, 1925, ch. 3, 1925 W. Va. Acts 24-32; Act of May 16, 1927, ch. 552, § 1, 1927 Cal. Stat. 938; Act of Mar. 19, 1927, ch. 95, § 2, 1927 N.J. Laws 181; Act of Mar. 9, 1927, ch. 156, § 1, 1927 Ind. Acts 469; Act of Apr. 19, 1927, ch. 234, § 1, 1927 Iowa Acts 201; Act of Apr. 22, 1927, ch. 1052, § 4, 1927 R.I. Pub. Laws 257; Act of Apr. 27, 1927, ch. 326, § 1, 1927 Mass. Acts 413-14; Act of June 2, 1927, No. 372, § 3, 1927 Mich. Pub. Acts 888-89; Act of May 28, 1929, ch. 132, § 1, 1929 Wis. Laws 157; Act of Apr. 25, 1929, No. 329, § 2, 1929 Pa. Laws 777; Act of Apr.

Fordham Urb. L.J. at 64-67 (describing the development of machinegun laws in "at least 32 states" beginning between 1925 and 1934).

Indeed, many States moved quickly to ban machinegun possession outright. *See, e.g.*, Act of Act of June 2, 1927, No. 372, § 3, 1927 Mich. Pub. Acts 888-89 (making it illegal to "possess any machine gun"); Act of May 16, 1927, ch. 552, § 1, 1927 Cal. Stat. 938 (making it illegal to "possesses any firearm of the kind commonly known as a machine gun"); Act of Apr. 19, 1927, ch. 234, § 1, 1927 Iowa Acts 201 (banning "possession [of any described] machine gun"); Act of May 28, 1929, ch. 132, § 1, 1929 Wis. Laws 157 (criminalizing "possession [of] a machine gun"); Act of Apr. 25, 1929, No. 329, § 2, 1929 Pa. Laws 777 ("An Act prohibiting the sale, giving away, transfer, purchasing, owning, possession and use of machine guns"); Act of June 1, 1929, H.R. 498, § 1, 1929 Mo. Laws 170 (making it unlawful to "have in actual possession or control any machine gun"); Act of Feb. 25, 1931,

---

29, 1929, ch. 190, § 1, 1929 Neb. Laws 674; Act of June 1, 1929, H.R. 498, § 1, 1929 Mo. Laws 170; Act of Feb. 25, 1931, ch. 249, § 1, 1931 Del. Laws 813; Act of Mar. 9, 1931, ch. 178, § 2, 1931 N.D. Laws 306; Act of Apr. 15, 1931, ch. 435, § 1, 1931 N.Y. Laws 1033; Act of July 2, 1931, § 2, 1931 Ill. Laws 452; Act of July 7, 1932, No. 80, § 2, 1932 La. Acts 337; Act of Feb. 28, 1933, ch. 206, §§ 1-5, 1933 S.D. Laws 245; Act of Mar. 6, 1933, ch. 64, § 1, 1933 Wash. Laws 335; Act of Mar. 10, 1933, ch. 315, § 3, 1933 Or. Laws 489; Act of Apr. 8, 1933, No. 64, 1933 Ohio Laws 189; Act of Apr. 10, 1933, ch. 190, § 3, 1933 Minn. Laws 233; Act of Apr. 27, 1933, No. 120, § 2, 1933 Haw. Laws 117; Act of Oct. 25, 1933, ch. 82, §§ 2-3, 1933 Tex. Laws 219; Act of Nov. 28, 1933, ch. 62, § 1, 1933 Kan. Laws 76; Act of Mar. 2, 1934, No. 731, §§ 2-4, 1934 S.C. Acts 1288; Act of Mar. 7, 1934, ch. 96, §§ 2-5, 1934 Va. Acts 137.

ch. 249, § 1, 1931 Del. Laws 813 (making it unlawful for any person or persons "to have a machine gun in his or their possession"); Act of July 7, 1932, No. 80, § 2, 1932 La. Acts 337 (making it "unlawful for any person to sell, keep or offer for sale, loan or give away, purchase, possess, carry or transport any machine gun"); Act of Mar. 6, 1933, ch. 64, § 1, 1933 Wash. Laws 335 (making it "unlawful for any person to manufacture, own, buy, sell, loan, furnish, transport, or have in possession, or under control, any machine gun"); Act of Apr. 10, 1933, ch. 190, § 3, 1933 Minn. Laws 233 (making it unlawful to "own, control, use, possess, sell or transport a machine gun"); Act of Oct. 25, 1933, ch. 82, §§ 2-3, 1933 Tex. Laws 219 (making it unlawful to "possess or use a machine gun"); Act of Nov. 28, 1933, ch. 62, § 1, 1933 Kan. Laws 76 (making it generally unlawful for private individuals to "have in his possession or under his control a firearm known as a machine rifle, machine gun, or submachine gun").

Congress, too, addressed this "most dangerous weapon," S. Rep. No. 73-1444, at 1-2 (1934), by enacting the National Firearms Act 1934, which imposed a $200 tax on machineguns and required that they be registered with the federal government, *see* 26 U.S.C. §§ 5801-5802, 5811-5812, 5821-5822, 5841-5842, 5845(a)-(b). The $200 tax was prohibitively expensive to most Americans, as it was "equivalent to nearly $4,500 today." W. Kip Viscusi & Kyle J. Blasinsky,

22

*Leveraging Public Support for Gun Laws to Reduce Mass Shootings*, 2024 U. Ill. L. Rev. 707, 755 (2024).

Finally, in 1986, Congress adopted § 922(o) as part of the Firearm Owners' Protection Act, Pub. L. No. 99-308, § 102, 100 Stat. 449, 453 (1986). That provision "effectively freezes the number of legal machine guns in private hands at its 1986 level," *United States v. Kenney*, 91 F.3d 884, 885 (7th Cir. 1996), by making it illegal for "any person to transfer or possess a machinegun" unless the transfer or possession is (a) under the authority of a government entity or (b) involves a "machinegun that was lawfully possessed" before 1986, 18 U.S.C. § 922(o)(2)(A), (B). The transfer of a pre-1986 machinegun continues to be subject to a $200 tax. 26 U.S.C. § 5811(a).

This record refutes Alsenat's assertion that banning the mere possession of dangerous and unusual weapons, like machineguns, violates the Second Amendment's historical understanding. Section 922(o) thus satisfies *Bruen's* second-step inquiry.

**3.    Alsenat's as-applied challenge was not properly raised either in his motion to dismiss or in this appeal, and § 922(o)'s prohibitions do not depend on an individual's personal characteristics in any event.**

Alsenat's as-applied challenge was waived by his unconditional guilty plea, because, unlike his facial challenge, it does not assert that a factually-admitted § 922(o) violation is something the government may not prosecute. *Class v. United*

*States*, 583 U.S. 174, 179 (2018); *see United States v. Deng*, 104 F.4th 1052, 1054 (8th Cir.) (as-applied challenge to 18 U.S.C. § 922(g)(3) was waived by unconditional guilty plea), *cert. denied*, 145 S. Ct. 348 (2024); *see also United States v. Napa Moreira*, 810 F. App'x 702, 706 (11th Cir. 2020) (deeming an as-applied constitutional challenge waived).

Even if properly raised in this appeal, resolving as-applied constitutional challenges is disfavored at the dismissal motion stage, because it "would require the Court to go well outside the facts presented in the indictment and to make factual findings that it simply cannot do so at this stage." *United States v. Farrier*, No. 1:23-CR-212-TFM, 2024 WL 184451, at *3 (S.D. Ala. Jan. 17, 2024). *See United States v. Pope*, 613 F.3d 1255, 1261 (10th Cir. 2010) (affirming the denial of a dismissal motion raising an as-applied challenge to 18 U.S.C. § 922(g)(9), because resolution of the motion required "extra-indictment" facts about the defendant's circumstances). "Under Fed. R. Crim. P. 12(b) an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Snipes*, 611 F.3d 855, 866 (11th Cir. 2010) (cleaned up).

Alsenat pled guilty after his dismissal motion was denied, and neither party had the opportunity or need to explore the facts regarding the particular risks associated with Alsenat's possession and sale of machinegun conversion devices.

Only the presentence investigation report's description of his prior offenses is in the record. But this is not a sentencing appeal applying the categorical approach to determine whether his prior offenses constitute violent felonies, where the actual facts of the crimes committed are not relevant, let alone all other aspects of Alsenat's personal characteristics that might render § 922(o) constitutional as applied to him. *See United States v. Lightsey*, 120 F.4th 851, 858 (11th Cir. 2024) (describing the categorical approach's application to sentencing appeals).

Finally, Alsenat's as-applied challenge would otherwise fail because he has offered no reason why § 922(o)'s machinegun regulation depends on his personal circumstances. Unlike the as-applied challenges to 18 U.S.C. § 922(g)(1) Alsenat cited in his dismissal motion (DE:35:2-3), § 922(o)'s machinegun regulation is premised on the unusually dangerous nature of the items being regulated, not the person being prohibited from possessing them. Whatever merits may exist to support a non-violent felon's challenge to § 922(g)(1) ban on all felons possessing firearms, no such personal circumstances are at issue in § 922(o). An as-applied challenge may be denied on this basis. *See One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No. LW001804*, 822 F.3d at 141 ("Watson offers no facts to distinguish why the challenged laws should not apply to him.").

Ultimately, this Court can directly rule that machineguns are unprotected by the Second Amendment. The uniform precedent of other circuits, a century-old

legislative consensus regulating machineguns, statistics about the number of legally owned machineguns, and the courts' common-sense acknowledgement that machineguns are highly dangerous demonstrate that machinegun regulations are facially constitutional. The history of both state and federal blanket bans on the possession of such dangerous and unusual weapons, including machineguns, belie Alsenat's attempt to carve out an as-applied exception for himself. Consequently, both his facial and as-applied challenges to 18 U.S.C. § 922(o) fail.

## Conclusion

For the foregoing reasons, Alsenat's § 922(o) conviction should be affirmed.

Respectfully submitted,

Jason A. Reding Quiñones
United States Attorney

By:   */s/ Jonathan D. Colan*
Jonathan D. Colan
Senior Appellate Attorney
99 N.E. 4th Street
Miami, FL 33132
(305) 961-9383
Jonathan.Colan@usdoj.gov

Daniel Matzkin
Chief, Appellate Division

Alexandra Bailey
Assistant United States Attorney

Of Counsel

26

**Certificate of Compliance**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,241 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements for Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016, 14-point Times New Roman font.

**Certificate of Service**

I HEREBY CERTIFY that the foregoing Brief for the United States was filed using CM/ECF on this 14th day of August, 2025, and that, on same day, the foregoing brief was served via CM/ECF on Hector A. Dopico, Interim Federal Public Defender, Federal Public Defender's Office and Eboni Blenman, Assistant Federal Public Defender, counsel for Maxon Alsenat.

*/s/ Jonathan D. Colan*
Jonathan D. Colan
Senior Appellate Attorney

*ags*

27