NO. 24-14058-JJ

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
*Plaintiff/appellee,*

v.

MAXON ALSENAT
*Defendant/appellant.*

———————————

On Appeal from the United States District Court
for the Southern District of Florida

———————————

REPLY BRIEF OF THE APPELLANT
MAXON ALSENAT

———————————

HECTOR A. DOPICO
Federal Public Defender
EBONI BLENMAN
Assistant Federal Public Defender
Attorneys for Appellant
150 West Flagler Street, Suite 1700
Miami, Florida 33130
Telephone No. (305) 530-7000

THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL APPEAL)

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

United States v. Maxon Alsenat
Case No. 24-14058-JJ

Appellant, Maxon Alsenat files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

Alsenat, Maxon, Defendant

Augustin-Birch, Panayotta D., U.S. Magistrate Judge

Bailey, Alexandra, Assistant United States Attorney

Blenman, Eboni, Assistant Federal Public Defender

Brown, Bruce O., Assistant United States Attorney

Caruso, Michael, Former Federal Public Defender

Colan, Jonathan D., Assistant United States Attorney

Davis, Michael S, Assistant United States Attorney

Day, Timothy, Former Assistant Federal Public Defender

Diaz Espinosa, Stefan Rafael, Assistant United States Attorney

Dopico, Hector, A., Federal Public Defender

Gayles, Darrin P., United States District Judge

Klco, Sara Michele, Assistant United States Attorney

Lapointe, Markenzy, Former United States Attorney

Leibowitz, David S., United States District Judge

Matzkin, Daniel, Chief, Appellate Division, Assistant United States Attorney

O'Byrne, Hayden P., Former United States Attorney

Reding Quinones, Jason A., United States Attorney

Strauss, Jared M., United States Magistrate Judge

United States of America, Plaintiff/Appellee

Valle, Alicia O., United States Magistrate Judge

*/s/Eboni Blenman*
Eboni Blenman
Assistant Federal Public Defender
150 W. Flagler St., Ste. No. 1700
Miami, FL 33130
Telephone: (305) 530-7000
Email:  eboni_blenman@fd.org

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..................................... C-1

TABLE OF CITATIONS ........................................................................ii

REPLY ARGUMENT AND CITATIONS OF AUTHORITY .................... 1

Section 922(o) Is Not a Mere "Manner" Restriction Exempted from the Second Amendment but a Flat Ban on an Entire Class of Arms………………………………………………………………….……1

The Government Misapplies *Bruen*'s Step One: A Machinegun Is Plainly an "Arm" Protected by the Second Amendment………………3

The Government Has Not Shown a Comparable Historical Tradition……………………………………………………………….4

Mr. Alsenat's As-Applied Challenge Was Properly Raised, Turned on Undisputed Facts, and Was Not Waived by Pleading Guilty……………………………………………………………….……9

CONCLUSION ...................................................................................... 11

CERTIFICATE OF COMPLIANCE........................................................ 13

CERTIFICATE OF SERVICE................................................................ 14

# TABLE OF CITATIONS

**Cases**

*Access Now, Inc. v. Sw. Airlines Co.,*

  385 F.3d 1324 (11th Cir. 2004) ............................................................1

*Avitabile v. Beach,*

  368 F. Supp. 3d 404 (N.D.N.Y. 2019) ..................................................6

*Caetano v. Massachusetts,*

  577 U.S. 411 (2016) ..............................................................................6

*Class v. United States,*

  583 U.S. 174 (2018) ..............................................................................9

*Friedman v. City of Highland Park,*

  784 F.3d 406 (7th Cir. 2015) ................................................................7

*Maloney v. Singas,*

  351 F. Supp. 3d 222 (E.D.N.Y. 2018) ..................................................6

*McDonald v. City of Chicago,*

  561 U.S. 742 (2010) ..............................................................................2

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*

597 U.S. 1 (2022) ...............................................................2, 3, 5, 8, 9

*United States v. Bridges,*

— F.4th —, 2025 WL 2250109 (6th Cir. Aug. 7, 2025) ..........................3

*United States v. Saavedra,*

  596 F.3d 1159 (10th Cir. 2010) .............................................................10

*United States v. Snipes,*

  611 F.3d 855 (11th Cir. 2010) ...............................................................10

## Statutes

Pub. L. No. 99-308 ...................................................................................6

U.S. Const. amend. II ..............................................................................3

18 U.S.C. § 922(o) ........................................................... 6, 8, 9, 10, 11, 12

## REPLY ARGUMENT AND CITATIONS OF AUTHORITY

**Section 922(o) Is Not a Mere "Manner" Restriction Exempted from the Second Amendment but a Flat Ban on an Entire Class of Arms**

The government seeks to skirt Second Amendment scrutiny through its new "mode or manner of fire" theory, recasting § 922(o) as a simple regulation of firearm operation rather than the categorical ban that it is. That characterization is both procedurally waived and substantively wrong.

As an initial matter, the government's newly raised theory is waived. The government never advanced this argument below, and it cannot raise a new theory of constitutionality for the first time on appeal. *See, e.g., Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("[A]n issue not raised in the district court and raised for the first time on appeal will not be considered."). Having foregone this argument below, the government cannot now reframe the statute as a mere "manner" regulation to avoid the plain constitutional question presented.

Waiver aside, the argument fails on its own terms. What defines a machinegun is its ability to fire automatically. That mechanical feature

is not a "mode" of using some other arm—it is what makes the weapon a distinct class of arm in the first place. Recasting that defining characteristic as a mere "manner of fire" collapses the category entirely. Under the government's logic, Congress could ban any firearm simply by relabeling its operation as an impermissible "mode." Nothing in *Heller* or *Bruen* permits such semantic workarounds to the Second Amendment's protection.

Finally, the government's reliance on § 922(o)'s asserted purpose—preventing "indiscriminate[]" harm, Gov't. Br. at 24—cannot salvage the statute. *Bruen* expressly rejected means-end justifications and interest balancing. 597 U.S. 1, 17 (2022) ("[T]o justify its regulation, the government may not simply posit that the regulation promotes an important interest."). As the Court emphasized, the Second Amendment "is not a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Id.* at 72 (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010)). The question is not whether Congress acted for a "legitimate purpose," but whether § 922(o) is consistent with this Nation's historical tradition of firearm regulation. It is not.

**The Government Misapplies *Bruen*'s Step One: A Machinegun Is Plainly an "Arm" Protected by the Second Amendment.**

The government also misapplies *Bruen*'s first step. Step One is clear. It asks only whether the conduct at issue—here, possession of a machinegun—falls within the Second Amendment's plain text. *Bruen*, 597 U.S. at 24.

The text provides that "[t]he right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. And *Bruen*, in turn, defined "Arms" broadly to include "any thing that a man wears for his defense, or takes into his hands, or useth in wrath to cast at or strike another." *Id.* (cleaned up). A machinegun plainly fits within that definition. As the Sixth Circuit recently explained, "a machinegun—such as a handgun modified for fully automatic fire—is undoubtedly an 'Arm[]' that one can 'keep and bear.'" *United States v. Bridges*, — F.4th —, 2025 WL 2250109, at *5 (6th Cir. Aug. 7, 2025).

Moreover, neither the Supreme Court nor this Circuit has ever held otherwise. *Heller* made clear that the Second Amendment "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." 554

U.S. at 582. Nothing in *Heller*, *Bruen*, or any other decision removes machineguns from that plain-text coverage.

The government's "common use" argument has no place at Step One, which again asks only whether the Second Amendment's text covers the conduct—nothing more. Questions about how widely a weapon is owned or used go to Step Two, where the government must prove a historical tradition of regulation. The government's approach attempts to avoid that burden by collapsing Step Two into Step One.

Under *Bruen*, the inquiry at Step One is straightforward. A machinegun is a bearable weapon that can be kept and borne for defense. That ends the plain-text inquiry. Whether the government may nonetheless restrict possession is a Step Two question—where its historical burden lies.

**The Government Has Not Shown a Comparable Historical Tradition**

Because possession of a machinegun plainly falls within the Second Amendment's plain text, the analysis proceeds to *Bruen*'s second step. At this stage, the government bears the burden of showing that §

922(o) is consistent with the Nation's historical tradition of firearm regulation. *Bruen,* 597 U.S. at 29–30. It has not met that burden.

The government's main claim—that machineguns are "dangerous and unusual" weapons outside the Amendment's protection—rests on a misreading of *Heller* and a misapplication of *Bruen. Heller* never held that any class of arms was categorically excluded from the Amendment's protection; it made clear that the right "extends, prima facie, to all instruments that constitute bearable arms." 554 U.S. at 582. And *Bruen* requires the government to justify modern restrictions through historical tradition, not by labeling weapons "dangerous" to avoid that inquiry. By collapsing the two steps of *Bruen*'s test, the government substitutes policy for history—precisely what the Supreme Court forbids.

Nor has the government shown that machineguns are "dangerous and unusual." As of April 2020, more than 726,000 machineguns were lawfully possessed in the United States and registered with the Bureau of Alcohol, Tobacco, Firearms and Explosives.[1] By May 2021, that

---

[1] U.S. Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, *Firearms Commerce in the United States: Annual Statistical Update 2020,* 15–16 (2021), *available at*

number had risen to over 740,000.[2] This is nearly four times the number of stun guns Justice Alito deemed sufficient to establish "common use" in *Caetano v. Massachusetts*, 577 U.S. 411, 420 (2016) (Alito, J., concurring). Courts have found far smaller numbers enough to demonstrate "common use." See *Maloney v. Singas*, 351 F. Supp. 3d 222, 237–38 (E.D.N.Y. 2018) (64,890 nunchaku sold over 23 years sufficient); *Avitabile v. Beach*, 368 F. Supp. 3d 404, 411–12 (N.D.N.Y. 2019) (ownership of 300,000 tasers sufficient). These figures account only for lawfully registered firearms grandfathered before 1986. See 18 U.S.C. § 922(o)(2)(B); Pub. L. No. 99-308 (May 19, 1986). The actual number of machineguns in private hands is undoubtedly higher. Even unlawfully possessed weapons count for "common use" purposes—*Heller* focuses on ownership and possession, not legality. Cf. *Friedman v. City of Highland Park*, 784 F.3d 406, 409 (7th Cir. 2015) ("it would be absurd to say that the reason why a particular weapon can be banned is that there is a statute banning it").

---

https://www.atf.gov/file/149886/download.

[2] U.S. Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, *Firearms Commerce in the United States: Annual Statistical Update 2021*, 15–16 (2021), *available at* https://www.atf.gov/firearms/docs/report/2021-firearms-commerce-

The government has likewise failed to identify any founding-era tradition of banning entire classes of arms. At the founding, weapons of varying types no doubt existed, yet the government offers no American jurisdiction that prohibited possession of any kind of weapon. Nothing in the record suggests that any class of arms—whatever its design or firing mechanism—was regarded as beyond the Second Amendment's protection at founding. The English and early American laws the government cites are not close. The medieval Statute of Northampton and related affray cases regulated *how* weapons were carried in public—prohibiting armed terror or affray—not mere possession by law-abiding citizens. They addressed conduct, not possession.

Likewise, the nineteenth-century state laws banning weapons such as slungshots, billy clubs, and bowie knives arose long after the founding and targeted specific criminal misuses or concealed carry. *Bruen* emphasized that such "late-19th-century evidence cannot provide much insight into the meaning of the Second Amendment." Id. at 58 n.28. The government has not shown that those restrictions are comparable to § 922(o)'s modern prohibition. Although some were

---

report/download.

complete bans, they applied to fundamentally different kinds of weapons and for entirely different reasons. None disarmed ordinary citizens based on a weapon's mechanical design or rate of fire. They therefore shed no light on whether Congress may prohibit possession of a machinegun by all law-abiding citizens.

The government's reliance on laws from the 1920s and 1930s—including the 1934 National Firearms Act—only underscores the absence of any founding-era tradition. *Bruen* made clear that "the public understanding of the right to keep and bear arms in 1791" governs the analysis, not modern enactments passed more than a century later. *Id.* at 37–38. Post–World War I machinegun laws reflected new policy responses to organized crime, Prohibition-era violence, and technological change—not the original understanding of the right. *Bruen* identified those kinds of modern responses to "unprecedented societal concerns" as precisely the sort of interest-balancing the Second Amendment forbids. *Id.* at 27. And even those early twentieth-century measures, like the National Firearms Act, did not impose a ban at all—they required tax payment and registration.

That regulatory approach is a far cry from the sweeping criminal prohibition Congress enacted in § 922(o).

**Mr. Alsenat's As-Applied Challenge Was Properly Raised, Turned on Undisputed Facts, and Was Not Waived by Pleading Guilty**

A guilty plea does not bar a defendant from challenging the constitutionality of the statute under which he was convicted—whether facially or as applied. *Class v. United States*, 583 U.S. 174, 176–77 (2018). In *Class*, the Supreme Court squarely held that a plea "does not bar a federal criminal defendant from challenging the constitutionality of the statute of conviction on direct appeal." Id. at 176; see also id. at 182–83 ("a valid guilty plea … does not bar direct appeal where the claim on appeal is that the statute of conviction is unconstitutional").

Mr. Alsenat's challenge fits squarely within that rule. He does not dispute the factual basis of his plea; he contests the government's power to criminalize his conduct under § 922(o). That claim goes to the government's constitutional authority to prosecute, not to case-specific facts.

Nor does Rule 12(b) or Eleventh Circuit precedent support the government's waiver argument. Rule 12(b) expressly permits pretrial

9

motions that raise "an infirmity of law in the prosecution." *United States v. Snipes*, 611 F.3d 855, 866 (11th Cir. 2010). Mr. Alsenat's motion did exactly that—it challenged § 922(o) as unconstitutional as applied to a non-felon's possession of a firearm. That question is purely legal and does not depend on any factual dispute.

The government cites no Eleventh Circuit case holding that an as-applied constitutional challenge cannot be raised in a motion to dismiss, and there is none. To the contrary, such motions are appropriate when they rest on undisputed facts and a legal question. *See id.* (a motion to dismiss is proper when it asserts a legal defect in the prosecution).

Here, the relevant facts were undisputed and already before the court: Mr. Alsenat was a citizen and non-felon who possessed a machine gun, as defined by federal law. No further factual development was needed to resolve whether § 922(o), as applied to that conduct, is consistent with the Second Amendment's text and history.

The government's argument that "neither party had the opportunity or need to explore the facts" simply misses the point. There was no need for discovery or testimony because the only issue was legal—whether Congress may constitutionally criminalize possession of

arms that fall within the Second Amendment's protection. That question was properly raised in Mr. Alsenat's pretrial motion, decided as a matter of law, and preserved for review.

## CONCLUSION

A machinegun plainly qualifies as an "Arm" that one may "keep and bear" and is therefore presumptively protected. The government has failed to carry its burden at Step Two to identify any "well-established and representative" historical analogue remotely comparable to § 922(o)'s categorical ban. Whatever late-arriving statutes or dicta it cites, no American jurisdiction prohibited any kind of weapon at the founding, and nothing in our early history supports Congress's wholesale criminalization of the possession of a protected arm.

Nor has Mr. Alsenat waived his right to press this claim. A guilty plea does not bar a defendant from challenging the constitutionality of the statute of conviction, and Mr. Alsenat's as-applied challenge rests on undisputed facts and a purely legal question. Because § 922(o) violates the Second Amendment both on its face and as applied to Mr. Alsenat, this Court should vacate the judgment of the district court.

Respectfully submitted,

HECTOR A. DOPICO
Federal Public Defender

/s/*Eboni Blenman*
Eboni Blenman
Assistant Federal Public Defender
150 West Flagler Street, Suite 1700
Miami, Florida 33130
Telephone No. (305) 530-7000

12

## CERTIFICATE OF COMPLIANCE

I CERTIFY that this brief complies with the type-volume limitation and typeface requirements of Fed. R. App. P. 32(a)(7)(B), because it contains 2,049 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point, Century Schoolbook font.

*s/Eboni Blenman*
Attorney for Appellant,
Maxon Alsenat
Dated: October 6, 2025

13

## CERTIFICATE OF SERVICE

I HEREBY certify that on the 6th day of October 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day via CM/ECF on Jonathan D. Colan, Assistant United States Attorney and on Matzkin, Daniel, Chief, Appellate Division, Assistant United States Attorney, 99 N.E. 4th Street, Miami, Florida 33132.

*s/Eboni Blenman*
Eboni Blenman
Assistant Federal Public Defender

14